Ryan L. McBride, Esq. (SBN 297557)
ryan@kazlg.com
Jonathan Gil, Esq. (SBN 347431)
jonathan@kazlg.com
**Kazerouni Law Group, APC**
2221 Camino Del Rio S, Suite 101
San Diego, CA 92108
Phone: (800) 400-6808
Fax: (800) 520-5523

Zachary Z. Zermay, Esq. (SBN 330221)
zach@zermaylaw.com
**Zermay Law Group**
3000 Coral Way, Suite 1115
Coral Gables, FL 33145
Phone: (305) 767-3529
Fax: (844) 894-6204

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

Ahmad Alkayali, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

LexisNexis Risk Solutions Inc.,

Defendants.

Case No. **'24CV1713 AGS MMP**

**Class Action** Complaint for **Violations of:**
**(1) The Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.***
**(2) California Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785.1 *et seq.***
**(3) California's Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq.***
**(4) Negligent Misrepresentation**
**(5) Intentional Misrepresentation**
**(6) Consumer Legal Remedies Act, Cal. Civ. Code § 1770 *et seq.***
**DEMAND FOR JURY TRIAL**

## Introduction

1.   The United States Congress passed the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* (hereinafter "FCRA") to promote accuracy, fairness, and privacy of information in the files of consumer reporting agencies. The FCRA protects consumers from the willful and/or negligent disclosure of inaccurate information on consumer credit reports.

2.   Additionally, the California Legislature passed the Consumer Credit Reporting Agencies Act, Cal. Civ. § 1785 *et seq.* ("CCRAA"), "to require that consumer credit reporting agencies adopt reasonable procedures" for handling consumer information such that it is "fair and equitable to the consumer with regard to confidentiality, accuracy, relevancy, and proper[ly] utilize[ed]."[1]

3.   Plaintiff Ahmad Alkayali ("Plaintiff"), through his attorneys, bring this class action seeking damages and any other available legal or equitable remedies resulting from the illegal actions of Defendant LexisNexis Risk Solutions Inc.("Lexis") for negligently, knowingly, and/or willfully reporting inaccurate information on Plaintiff's consumer report without maintaining "reasonable procedures to assure maximum possible accuracy of the information" concerning the consumer.

4.   Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

5.   While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

---

[1] Cal. Civ. Code § 1785.1(d)

6.    Unless otherwise stated, all of the conduct engaged in by Defendant took place in California.

7.    Any violations by Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violations.

8.    Unless otherwise indicated, the use of Defendant's name in this Complaint includes all of Defendant's agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## **Jurisdiction and Venue**

9.    This Court has federal question jurisdiction over this matter, pursuant to 28 U.S.C. § 1331, because this action arises out of violations of the FCRA, 15 U.S.C. §§ 1681, *et seq*.

10.    This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within this judicial district. Thus, Defendant has sufficient minimum contacts within this State and district, and otherwise purposefully avails itself of the markets in this State to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

11.    Venue is proper in the United States District Court for the Southern District of California, pursuant to 28 U.S.C. § 1391, for the following reasons: (1) a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this judicial district; (2) Defendant is subject to personal jurisdiction by this Court because Defendant regularly conducts business within this judicial district; and (3) Plaintiff resides in the State of California.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Parties**

12.    Plaintiff is a natural person residing in the City of Pauma Valley, County of San Diego, State of California.

13.    Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

14.    Plaintiff is a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(b).

15.    Defendant is a global data and analytics company, which provides consumer reports and does business in the State of California.

16.    Plaintiffs are informed and believe, and thereon allege, that Defendant is a "consumer reporting agency" as the term is defined by 15 U.S.C. § 1681a(f).

17.    Plaintiffs are informed and believe, and thereon allege, that Defendant is a "consumer credit reporting agency" as the term is defined by Cal. Civ. Code § 1785.3(d).

**The Fair Credit Reporting Act**

18.    The FCRA is a consumer protection statute which regulates the activities of credit reporting agencies and users of credit reports, and which provides certain rights to consumers affected by use of the collected information about them.

19.    Congress designed the FCRA to preserve the consumer's right to privacy by safeguarding the confidentiality of the information maintained by the consumer reporting agencies. Congress stated in the opening section of the FCRA that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

20.    Under the FCRA, the term "consumer report" means "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's creditworthiness, credit standing, credit capacity,

character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor" in the underwriting of credit transactions involving the consumer. 15 U.S.C. § 1681a(d)(1).

21. The FCRA defines a "consumer reporting agency" as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling consumer credit information or other information about consumers for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f).

22. In preparing a consumer report, a consumer reporting agency is required to "follow reasonable procedures to assure maximum possible accuracy of the information" concerning the consumer." 15 U.S.C. § 1681e(b).

## The California Consumer Credit Reporting Agencies Act

23. Similarly to the FCRA, the CCRAA emphasizes safeguarding consumers, declaring, "Consumer credit reporting agencies have assumed a vital role in assembling and evaluating consumer credit" and "[t]here is a need to insure that consumer credit reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." Cal. Civ. Code §§ 1785.1(b)-(c).

24. The CCRAA further regulates the practices of consumer credit reporting agencies within California, ensuring accuracy and deterring adverse action and negative outcomes for consumers. Cal. Civ. Code § 1785.3(a)(3)(B).

25. Under the CCRAA, both "consumer credit reporting agency" and "consumer report" are defined using identical language as in the FCRA.[2]

---

[2] Cal. Civ. Code §§ 1785.3(c)-(d); 15 U.S.C. §§ 1681a(d)(1), 1681a(f)

26.   Furthermore, although the CCRAA states that "[a]ny consumer credit reporting agency or user… against whom an action brought pursuant to Section 1681n or 1681o of Title 15 of the United States Code is pending shall not be subject to suit for the same act or omission under [the CCRAA]," California courts have interpreted this to apply only in circumstances where there is a prior action pending under federal law, and the action is later brought under state law. [3] Therefore, a suit may allege violations of both the FCRA and CCRAA. Moreover, the state law at issue (including convictions predating the report date by more than seven years) has been identified within the state statue since 1975 and sufficiently passes the FCRA preemption test, which requires state law to take effect prior September 30, 1996 to avoid preemption.[4]

## Factual Allegations

27.   At all times relevant to this matter, Plaintiff resided in the State of California.

28.   At all times relevant to this matter, Defendant conducted business with numerous customers in the Southern District of California.

29.   In or around June of 2023, Plaintiff attempted to procure a loan through Layne Capital.

30.   Throughout the process, Plaintiff properly provided the lenders all of the applicable information.

31.   Unfortunately, on or around July 10, 2023, prior to approving the loan, Layne Capital told Plaintiff that there are "*unspecified criminal charges that we will need written explanations for.*"

---

[3] *Cisneros v. U.D. Registry, Inc.*, 39 Cal. App. 4th 548, 556 (1995)
[4] *Kemp v. Superior Court*, 86 Cal. App. 5th 981, 999 (2022)

32.   Layne Capital sent him their source for the false accusation: a LexisNexis consumer report identifying three "Criminal Occurrences" as seen on 05/08/2014. The report shows "Generated on: 07/10/2023 – 3:33 PM ET."

33.   The consumer report then detailed "Offender information" related to these occurrences. Under each "Offense" the report detailed the court case number. The three case numbers were **99RJAA, **508AA, and **939AA. Under the category of "Court Offense," each reported "NOT SPECIFIED."

34.   Plaintiff felt shocked and offended by the outrageous consumer report. Indeed, Plaintiff has *never* been charged or convicted of any criminal offense.

35.   Frustrated, Plaintiff reached out to Defendant to have the inaccuracies corrected.

36.   In July of 2023, Plaintiff contacted Defendant to dispute the three criminal findings in the report.

37.   In a letter dated August 31, 2023, Defendant responded that "[u]pon review of our investigation, we have verified that our Criminal Records are accurate as reported." Furthermore, Defendant stated the following:

> LexisNexis is not a consumer reporting agency, and, as such, the LexisNexis Accurint product is not governed by the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.). Accurint reports are not permitted to be used to grant or deny credit, make employment decisions, make tenant and housing screening decisions, or any other uses regulated by the Fair Credit Reporting Act. LexisNexis purchases, collects, and resells data, which include public records and commercially available data…

38.   Naturally, the question presents itself: If Defendant is claiming not to be a consumer reporting agency and not governed by the FCRA, how did Plaintiff

find himself at the mercy of inaccurate information contained within Defendant's consumer report?

39.    The "LexisNexis Accurint" website too provides a disclosure at the bottom of the page:

The Accurint® services are not provided by "consumer reporting agencies," as that term is defined in the Fair Credit Reporting Act (15 U.S.C. § 1681, et seq.) ("FCRA") and do not constitute "consumer reports," as that term is defined in the FCRA. Accordingly, the Accurint service may not be used in whole or in part as a factor in determining eligibility for credit, insurance, employment or for other eligibility determination purposes that would qualify the service as a consumer report under the FCRA[5]

40.    However, even the first words on the front page of the website say that "Accurint® is a direct connection to public records to help verify identities, *conduct investigations* and detect fraud."[6]

41.    Furthermore, Courts have found LexisNexis—and Accurint Reports, in particular—to be a consumer reporting agency and consumer report respectively.[7]

42.    Thus, when Plaintiff attempted to correct the inaccurate, derogatory information—that a potential creditor had expressly used for underwriting purposes—Defendant refused to even acknowledge an obligation to do so.

---

[5] https://www.accurint.com/ (Last Viewed 6/11/2024)
[6] *Id.* (emphasis added).
[7] *Abdallah v. LexisNexis Risk Solutions Fl*, 2021 U.S. Dist. LEXIS 62229, at *6 (E.D.N.Y. Mar. 30, 2021); *See also Greene v. LexisNexis Risk Sols. Inc.*, 2024 U.S. Dist. LEXIS 21234, at *9 fn. 5 (D.N.J. Feb. 7, 2024); *Adams v. LexisNexis Risk Information & Analytics Group, Inc.*, 2010 U.S. Dist. LEXIS 47123 (D.N.J. May 12, 2010) (finding a dispute in material facts whether Accurint reports qualify as consumer reports); *Berry v. LexisNexis Risk & Information Analytics Group, Inc.*, 2014 U.S. Dist. LEXIS 124415 (E.D. Va. Sept. 5, 2014) (alleging and ultimately settling a case where Lexis acted as if Accurint was not a consumer report, despite knowing that many or most customers would use it for FCRA purposes).

43.   In a letter dated January 23, 2024, Plaintiff wrote to Defendant to dispute its August 31, 2023, findings. The letter explained that "[t]hese findings are not accurate, and I do not have a criminal record with any of the courts that were listed on your report." Plaintiff further explained:

> This is a data processing error on your part, and you have probably mismatched my information with someone with a similar name, birth date, or social security number. I understand that Accruint [sic] runs large quantities of data quickly and carelessly and this is illustrated with my individual report. You report 3 criminal records in nearby county courts. These courts show no existence in their systems of the case numbers on the reports. Furthermore, these courts have no criminal record on file for me because there is none.

44.   Defendant first responded with a letter dated February 6, 2024, explaining it was "unable to authenticate [Plaintiff's] identity." Defendant requested documentation to verify Plaintiff's identity. Curiously, however, Defendant also noted that "LexisNexis files may contain name and other minor identifier variations within your file, *as do all consumer reporting agencies.*" (emphasis added).

45.   Plaintiff subsequently sent Defendant authentication of his identity via driver's license, social security card, and home address.

46.   In a letter dated February 26, 2024, Defendant wrote to Plaintiff, "we have verified that our Criminal records are accurate as reported." Additionally, Defendant reiterated that "LexisNexis is not a consumer reporting agency," and that "the LexisNexis Accurint product is not governed by the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.).

47. In effect, after receiving multiple requests to correct its inaccurate and derogatory reporting, Defendant not only refused to do so, but provided the same misleading disclaimer related to its FCRA responsibilities.

48. For a global data analytics broker to deny coverage under the FCRA and then outright reply that "the laws [do not] require LexisNexis to correct or change potentially inaccurate information," is outrageous.

49. In 2021, the National Consumer Law Center ("NCLC") published a report detailing Defendant's attempt to evade legal liability for its inaccurate reporting:

> Lexis appears to be attempting to evade the Fair Credit Reporting Act (FCRA), by inserting a disclaimer at the bottom of its promotional website stating, "Accurint for Government is not a consumer report (as defined in the Fair Credit Reporting Act) and may not be used for any purpose permitted by the FCRA." This type of disclaimer is part of a wave of businesses attempting to skirt coverage of the FCRA by disclaiming any intent to provide a "consumer report." By claiming that Accurint for Government is not a consumer report, Lexis is attempting to dodge the FCRA's requirements to adhere to certain standards of accuracy…If the FCRA applies, consumers would have the right to dispute inaccurate information contained in the report and have it investigated and corrected by LexisNexis.[8]

50. This comprehensive report by the NCLC also explained that "[i]n the context of eligibility for credit, the FTC clarified that a fraud database should be considered a consumer report under the FCRA *even if lenders using the data*

---

[8] Mancini, Sarah et al., *Mismatched and Mistaken: How the Use of an Inaccurate Private Database Results in SSI Recipients Unjustly Losing Benefits*, National Consumer Law Center (April 2021), https://www.nclc.org/wp-content/uploads/2022/08/RptMismatchedFINAL041421-1.pdf (Last accessed 6/12/2024)

*would not be permitted to deny applicants based on information from the data-base*, but would use it merely as a 'checkpoint.'"[9]

51.   In a 1998 Advisory Opinion, the FTC wrote "in response to [a letter] concerning the application of the Fair Credit Reporting Act ("FCRA") to [an individual's] company, which provides public criminal records information to its customers."[10] The FTC found that:

> From your description of its activities, it appears that, at the very least, your company "assembles" information as this term is commonly understood (dictionary definitions include "to gather" or "to collect"). Your company's record searchers go to local courthouses and review the records to find information. If they find information on an individual, they forward either a brief abstract or copies of the docket information. At your headquarters, a report is prepared consisting of all of the information reported by your agents from around the country. We believe that the activities you describe are sufficient to meet the definitional requirement of a CRA.

52.   Instead of complying with the FCRA, Defendant willfully and knowingly— while reporting inaccurate criminal, among other information—takes the untenable position that it does not provide consumer reports as defined and regulated by the FCRA. Defendant's position disregards the plain language of the FCRA and the CCRAA. Accordingly, Defendant systematically fails to comply with 15 U.S.C. § 1681 *et seq.* and Cal. Civ. Code § 1785 *et seq.*

53.   Thus, these representations also constitute unfair, unlawful, and fraudulent business acts or practices in violation of Bus. & Prof. Code § 17200 *et seq.*

---

[9] *Id.* at p. 28 (emphasis added).
[10] Haynes, William, *Advisory Opinion to LeBlanc*, June 9, 1998, https://www.ftc.gov/legal-library/browse/advisory-opinions/advisory-opinion-leblanc-06-09-98 (Last Accessed 6/12/24).

CLASS ACTION COMPLAINT

54.   Accordingly, Defendants statements to customers and consumers worldwide—through its letters and advertising—constitute negligent and/or intentional misrepresentations of its liability under the FCRA.

55.   That said, Plaintiff's overall financial wellbeing and character has been severely affected by Defendant's inaccurate reporting.

56.   Defendant has both the practical capability and the legal obligation to remove inaccurate information from its Accurint reports.

57.   Considering their knowledge of the actual error, Defendant willfully continued to report inaccurate and derogatory information. Plaintiff is, accordingly, eligible for statutory damages.

58.   Defendant also intentionally and systematically withholds FCRA and CCRAA information from consumers in order to minimize compliance costs and so consumers and to avoid liability for reporting inaccurate and illegal information. In turn, this allows Defendant's business partners to avoid customer service inquiries related to Accurint reports.

59.   Creating the false impression of Plaintiff's multiple account statuses not being known creates a material risk that Plaintiff would be denied credit, receive less favorable credit treatment than Plaintiff otherwise would, or receive other unfavorable treatment than Plaintiff otherwise would, from any viewer of Plaintiff's Equifax credit reports that is engaged in judgment-based lending.

60.   Plaintiff's injuries are concrete. Defendant's conduct of reporting inaccurate and derogatory information is analogous to the common law tort of defamation. Furthermore, the FCRA and CCRAA were enacted to protect consumers from precisely the conduct described in this Complaint. Congress found that the banking system is dependent upon fair and accurate credit reporting; and that, inaccurate credit reports directly impair the efficiency of

the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Consequently, the FCRA was enacted to insure fair and accurate reporting, promote efficiency in the banking system and protect consumer privacy; and to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. Supplemental to the FRCA, the CCRAA further protects consumers from erroneous conduct like that of Defendant. The alleged transgressions by Defendant would, if left unchecked in a competitive marketplace, naturally propagate had Congress not created laws to give vulnerable consumers a voice and a mechanism for private enforcement.

61. As a result of Defendant's conduct, Plaintiff suffered other actual damages in the form of mental anguish and emotional distress type damages, which manifested in symptoms including but not limited to: stress, anxiety, worry, restlessness, irritability, embarrassment, loss of sleep, shame, feelings of hopelessness, and helplessness all impacting her job and personal relationships.

62. Plaintiff was afraid to apply and refrained from applying for credit.

63. Plaintiff's creditworthiness has been harmed because of Defendants' actions.

64. Plaintiff was denied credit as a result of Defendant's reporting on Plaintiff's credit reports as complained of herein.

## **Class Action Allegations**

65. Plaintiff brings this action on behalf of himself and on behalf of all others similarly situated (the "Class").

66. Plaintiff represents, and is a member of the Class, consisting of the following proposed class definitions:

Credit Reporting Class

> All persons with an address within the United States who reported or disputed inaccurate information related to a crime regarding Accurint reports within the past two (2) years and the information was subsequently not corrected.

Misrepresentation Class

> All persons with an address within the United States who received written correspondence from Defendant stating that Defendant was not a credit reporting agency.

Misrepresentation Sub-Class

> All persons with an address within the United States who received written correspondence from Defendant stating that Accurint reports were not consumer reports.

67. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the thousands, if not more. This matter should therefore be certified as a Class action to assist in the expeditious litigation of this matter.

68. Plaintiff and members of the Class were harmed by Defendant's conduct when it, either directly or through its agents, inaccurately reported information on Class members' Accurint consumer reports. As such, Defendant negligently and/or willfully violated 15 U.S.C. § 1681e(b).

69. Furthermore, Plaintiff and members of the Class were harmed by Defendant's conduct when it, either directly or through its agents, unfairly,

unlawfully, and fraudulently stated that it is not bound by the obligations of the FCRA in violation of the UCL, Bus. & Prof. Code § 17200 *et seq*.

70.     Defendant did not qualify these misrepresentations. Defendant affirmatively stated and continues to state, its refusal to comply or abide by the FCRA.

71.     This suit seeks only recovery of actual and statutory damages and injunctive relief on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

72.     The joinder of Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court. The Class can be identified through Defendant's records or its agents' records.

73.     There is a well-defined community of interest in the question of law and fact involved affecting the parties to be represented. The question of law and fact to the Class predominate over questions which may affect individual Class members, including the following:

a.  Whether, within the two years prior to filing this Complaint, Defendant or its agents negligently and/or willfully inaccurately reported information on its Accurint consumer reports;

b.  Whether Defendant qualifies as a consumer reporting agency;

c.  Whether Defendant's "Accurint reports" qualify is consumer reports;

d.  Whether Plaintiff and the Class members were damaged thereby; and

e.  The extent of damages for Defendant's violations.

74.     As a person who suffered from Defendant's inaccurate reporting in the manner described above, Plaintiff asserts claims that are typical of the Class.

Plaintiff will fairly and adequately represent and protect the interest of the Class in that Plaintiff has no interests antagonistic to any member of the Class.

75.    Plaintiff and the members of the Class have all suffered irreparable harm as a result of Defendant's unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Due to the size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

76.    Plaintiff has retained counsel experienced in handling class action claims and claims involving the FCRA, CCCRAA, CLRA, UCL, and misrepresentation claims.

77.    A class action is a superior method for fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal law. Indeed, this case stems, in large part, from Defendant's acknowledgment of, but refusal to follow, the federal law governing its actions. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for FCRA violations are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

78.    Defendant has acted on grounds generally applicable to the Class, thereby making appropriate declaratory relief with respect to the Class as a whole.

## **Causes of Action**

### **Count I**

### **Fair Credit Reporting Act (FCRA)**

**15 U.S.C §§ 1681,** *et seq.*

79.   Plaintiff and the putative class repeat, re-allege, and incorporate by reference, paragraphs 1-78.

80.   The foregoing acts and omissions of Defendant constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C §§ 1681, *et seq.*

81.   Upon information and belief, Defendant did not follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and the putative class in violation of 15 U.S.C § 1681e(b).

82.   Defendant's unreasonable procedures resulted in several inaccuracies in Plaintiff's consumer report and the consumer reports of the other putative Class members.

83.   Plaintiff and members of the putative class were injured as a result of Defendant's inaccurate reporting.

84.   As a result of each and every negligent violation of the FCRA, Plaintiff and class members are entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendant.

85.   As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or damages of not less than $100 and not more than $1,000 and such amount as the court may allow for all other class members, pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable

attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendant.

## Count II

### California Consumer Credit Reporting Agencies Act (CCRAA)
### Cal. Civ. Code § 1785.1, *et seq.*

86.   Plaintiff re-alleges and incorporates by reference paragraphs 1-78 of this Complaint as though fully stated herein.

87.   The foregoing acts and omissions of Defendant constitute numerous and multiple willful, reckless or negligent violations of the CCRAA, including but not limited to each and every one of the above-cited provisions of the CCRAA, Cal. Civ. Code § 1785.1, *et seq.*

88.   Defendant's report directly impacted Plaintiff's credit worthiness, credit standing, and credit capacity, directly in violation of Cal. Civ. Code § 1785.3(c).

89.   Under the CCRAA, a consumer credit reporting agency may only furnish a report to a third party if the agency has reason to believe that the third party intends to use the information for specified purposed, including in connection with a credit transaction. Cal Civ Code § 1785.11(a). Therefore, Defendant must have had knowledge of Layne Capital's intention to use Plaintiff's information prior to providing it. Defendant knew it was furnishing a report with potential material consequences regarding Plaintiff's business with Layne Capital.

90.   Furthermore, Defendant's report violates Cal. Civ. Code § 1785.13(a) by including records of "Criminal Occurrences" dated May 8, 2014—nine years prior to the report generation date of July 10, 2023—far exceeding the statutory seven-year limit on criminal information.

91. Defendant did not follow reasonable procedures to assure compliance and accuracy of the information concerning Plaintiff and the putative class in violation of Cal. Civ. Code § 1785.25(g).

92. Plaintiff and members of the putative class were injured as a result of Defendant's inaccurate reporting.

93. As a result of each and every negligent violation of the CCRAA, Plaintiff and class members are entitled to actual damages as the Court may allow pursuant to Cal. Civ. Code § 1785.31(a); statutory damages pursuant to Cal. Civ. Code § 1785.31(a)(3) and reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1785.31(a)(1) from Defendant.

## Count III

### California's Unfair Competition Law ("UCL")

### Bus. & Prof. Code § 17200, *et seq.*

94. Plaintiff re-alleges and incorporates by reference paragraphs 1-78 of this Complaint as though fully stated herein.

95. Plaintiff and Defendant are each a "person" as defined by Cal. Bus. & Prof. Code § 17201. Cal Bus. & Prof. Code § 17204 authorizes a private right of action on both an individual and representative basis.

96. The UCL proscribes "unfair competition," defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising[.]" Bus. & Prof. Code § 17200. This definition creates three disjunctive "wrongs" that operate independently from one another, namely the (1) unlawful, (2) unfair, and (3) fraudulent prongs.

97. By and through Defendant's conduct alleged in detail above and herein, Defendant engaged in conduct which constitutes unlawful, unfair, and/or fraudulent business practices, and unfair, deceptive, untrue or misleading advertising, as prohibited by California's UCL.

98.  Defendant violated the unlawful prong through its negligent and/or intentional misrepresentations related to its "non-obligation" to adhere to the FCRA. Additionally, Defendant's refusal to adhere to the FCRA violated any compliance and dispute procedures of the FCRA in and of itself. 15 U.S.C. §§ 1681c, 1681e, 1681g, 1681i.

99.  Defendant's willful neglect and misrepresentations of its obligations under the FCRA also gives Defendant an unfair competitive advantage in the marketplace of consumer reporting. The dictates of the FCRA, in creating a safe and transparent environment for consumers and businesses, create strict and often costly mandates for reporting agencies. Thus, by advertising and repeatedly telling consumers that Defendant is not mandated by the FCRA[11], Defendant unfairly avoids these mandates that other companies are forced to follow. Furthermore, these unfair actions chill the ability of consumers to vindicate their rights under the FCRA and the CCRAA. Individual consumers—told, in writing, by a global consumer reporting agency, that they are not allowed to act upon the FCRA—prevents accountability and quality reporting.

100. Finally, Defendant's misrepresentations constitute a pattern of "fraudulent" business acts or practices within the meaning of the UCL. As discussed above, Courts have already found that Accurint reports may constitute consumer reports, subjecting Defendant to obligations under the FCRA. Nevertheless, Defendant makes affirmative representations on its website that the opposite is true. Moreover, Defendant repeats these fraudulent statements in response to dispute letters, as is the case herein.

---

[11] It is telling, and somewhat of an indictment, that Defendant feels the need to *repeatedly* advertise and state on letters that it is not bound by the FCRA. Such are the actions of culpability and denial, not transparency.

## Count IV

### Negligent Misrepresentation

101.    Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1-78 of this complaint as if fully stated herein.

102.    Defendant made representations, explained above, knowing, or having reason to know, that it acted as a consumer reporting agency, and that it sold and distributed consumer reports as defined by the FCRA.

103.    Defendant acted with the intent to induce the public and other organizations, including Plaintiff and putative Class members, to purchase Defendant's products.

104.    Plaintiff and the putative Class members saw, believed, and relied upon Defendant's representations in making their decisions to act in response to Defendant's reports.

105.    At all times relevant, Defendant knew or should have known that such representations were untrue as stated, and Defendant had no reasonable basis for believing the representations to be true.

106.    As a proximate result of Defendant's negligent misrepresentations, Plaintiff and other consumers were induced to chill potential disputes or action against Defendant. Furthermore, other companies were induced to purchase Defendant's product so as to not be bound by the FCRA, per Defendant's fraudulent claims.

107.    Accordingly, Plaintiff and putative class members suffered harm from their belief in an inability to pursue legal action or correct inaccurate Accurint reporting information. This information, among other things, negatively affects consumers ability to obtain credit, purchase homes/vehicles, and obtain employment.

## Count V

**Intentional Misrepresentation**

108.    Plaintiff repeats, re-alleges, and incorporates herein by reference paragraphs 1-78 as if fully stated herein.

109.    Defendant made representations, explained above, intentionally in an attempt to curry favor among other businesses and to chill its obligations to consumers under the FCRA.

110.    Defendant knew or had reason to know its representations were false, and continued to advertise them as accurate.

111.    Plaintiff and the putative Class members saw, believed, and relied upon Defendant's representations in deciding how to proceed when encountering inaccurate information.

112.    As a proximate result of Defendant's intentional misrepresentations, Plaintiff and the putative Class members were damaged in an amount to be determined at trial.

113.    Plaintiff alleges the "who, what when, where, and how" of Defendant's deception as follows:

    a.  The "who" is Defendant;

    b.  The "what" is the representation that Defendant is not bound by the obligations of the FCRA;

    c.  The "when" is the date Plaintiff received a letter detailing Defendant's refusal under the FCRA and Class members' respective letters from four years prior to the filing of this Complaint.

    d.  The "where" is in Defendant's responses to dispute letters (and on the front page of their website, among other promotional material); and

    e.  The "how" is purportedly Defendant's own words provided in the letter to Plaintiff and the putative class members.

114. By engaging in the acts described above, Defendant is guilty of malice, oppression, and fraud, and Plaintiff and the putative Class are therefore entitled to recover exemplary or punitive damages.

## Count VI

### California's Consumers Legal Remedies Act ("CLRA")

### California Civil Code §§ 1750, *et seq.*

115. Plaintiff repeats, re-alleges, and incorporates herein by reference paragraphs 1-78 of the complaint as if fully stated herein.

116. Plaintiff brings this claim for Defendant's violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*

117. The CLRA protects consumers against "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770(a).

118. The statute specifically enumerates the following unlawful practices, among others:

(5) Representing that goods or services have sponsorship approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have.

(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

(9) Advertising goods or services with intent not to sell them as advertised.

(14) Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law.

(16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

119. The Legislature's intent in promulgating the CLRA is expressed in Civil Code § 1760, which provides, *inter alia*, that its terms are to be:

> Construed liberally and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.

120. Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA based on the above-cited provisions. Defendant materially misrepresents its obligations under the FCRA and CCRAA to consumers and refuses to correct erroneous information in consumer reports.

121. Plaintiff is a "consumer" as defined pursuant to Civil Code § 1761(d).

122. Defendant's reports constitute both "goods" and "services" as defined pursuant to Civil Code §§ 1761(a), (b).

123. Defendant harmed Plaintiff through its misrepresentations and deceitful conduct regarding its consumer credit reporting and its refusal to correct Plaintiff's false report. Additionally, Defendant falsely claimed that it is not a consumer credit reporting agency.

124. Pursuant to California Civil Code § 1782(d), by letter dated August 20, 2024,[12] Plaintiff notified Defendant in writing via Certified Mail, Return Receipt Requested, of Plaintiff's prospective claims and Defendant's particular violations of law and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to so act. Should Defendant fail to rectify or agree to rectify the problems associated with the actions

---

[12] A true and correct copy of Plaintiff's letter dated August 20, 2024, is attached hereto as Exhibit A.

detailed above, Plaintiff will further seek actual, punitive, and statutory damages, as deemed appropriate.

125. Attached hereto as Exhibit B is a signed affidavit from Plaintiff pursuant to Cal. Civ. Code § 1780(d).

## **Prayer for Relief**

126. **WHEREFORE**, Plaintiff respectfully requests that the Court grant Plaintiff and the putative class the following relief against Defendant:

a. That this action be certified as a class action on behalf of the Class and Plaintiff be appointed as the representative of the Class.

b. That Plaintiff's attorneys be appointed as Class Counsel;

c. That Defendant's wrongful conduct be adjudged and decreed to violate the consumer protection statutes raised herein;

d. A temporary, preliminary, and/or permanent order for injunctive relief requiring Defendant to: (i) adhere to the dictates of the FCRA; (ii) undertake an immediate public information campaign to inform members of the proposed class as to their practices; (iii) revise any statements online or otherwise, disclaiming Defendant's obligations under the FCRA.

e. An award of statutory damages or an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1) and Cal. Civ. Code § 1785.31(a);

f. An award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2) and Cal. Civ. Code § 1785.31(b)

g. An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), 15 U.S.C. § 1681(o)(a)(1) and Cal. Civ. Code § 1785.31(a)(1) against Defendant;

h. Restitution and injunctive relief pursuant to Bus. & Prof. Code § 17203;

---

CLASS ACTION COMPLAINT

i.   Recovery of reasonable attorney's fees pursuant to, *inter alia*, Cal. Civ. Code §§ 1021.5, 1780(e);

j.   Judgment against Defendant for general and compensatory damages in an amount to be determined at trial;

k.   Punitive damages pursuant to Cal. Civ. Code §§ 3294, 1780(a)(4) and 15 U.S.C. § 1681n(a)(2); and

l.   Any other relief the Court may deem just and proper.

## **Trial By Jury**

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demand, a trial by jury.


Dated: September 25, 2024              **KAZEROUNI LAW GROUP, APC**


                                 By: /s/ Ryan L. McBride
                                     Ryan L. McBride, Esq.
                                     Attorney for Plaintiff